IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
Monte Wayne Zolnosky, and                                    No. 7-07-11879 MA
Lois Ann Zolnosky,

       Debtors.
_____

Ben and Lara Morrow,

       Plaintiffs,

v.                                                           Adv. No.: 07-1157 M

Monte and Lois Zolnosky,

       Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Complaint Objecting to Discharge and for Determination of Dischargeability of Debt (the "Complaint") filed by Ben and Lara Morrow ("Plaintiffs"), through their attorneys, White Koch Kelly & McCarthy, PA (Aaron Wolf) against Monte and Lois Zolnosky, the Debtors ("Defendants"). Defendants are represented by William F. Davis & Assoc. (Charles Hughson). The Complaint seeks a determination that the debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). A trial was held on July 31, 2008. Defendants, by oral motion, sought dismissal of the claims of Plaintiff Lara Morrow for failing to appear at trial. The Court granted Defendants' Motion and dismissed the claims of Plaintiff Lara Morrow. At the close of Plaintiff's case, Defendants, by Motion for Directed Verdict, moved for the dismissal of Defendants Monte and Lois Zolnosky from the proceeding. The Court denied the Motion as to Monte Zolnosky, granted the Motion as to Lois Zolnosky and dismissed the claims against Defendant Lois Zolnosky. The Court took the matter against

Defendant Monte Zolnosky under advisement. Upon review of the pleadings, evidence, and the applicable statutory and case law, the Court finds as follows:

## FACTS

1. Plaintiffs, Ben Morrow and Lara Morrow, are husband and wife, residing in Santa Fe County, New Mexico.
2. Defendants, Monte Wayne Zolnosky and Lois Ann Zolnosky, are individuals who owned and operated a corporation, Zolnosky Construction, Inc.
3. Plaintiff, Ben Morrow, met Monte and Lois Zolnosky over ten years ago through realtor Peter Hess.
4. Plaintiffs sought to make investments in real estate.
5. Over the course of several years, Plaintiffs loaned money to Defendants for the construction of houses.
6. Mr. Morrow testified that Mr. Zolnosky would contact him when Zolnosky became aware of a lot for sale or had purchased a piece of property and needed money for the construction of a home.
7. Mr. Zolnosky would provide Mr. Morrow with a construction mortgage and loan documents in return for the loan proceeds.
8. Mr. Zolnosky would give the documents to the title company to be recorded and then provided recorded copies to Mr. Morrow between several days to several months after each loan transaction occurred. Mr. Morrow was never required to record the loan documents.
9. Mr. Morrow testified that he knew the loan documents were recorded because the

documents had a stamp from some entity located on the construction mortgage documents. Mr. Morrow introduced Exhibit 5, which was a construction mortgage executed by the parties on or about January 26, 1999 and recorded in Santa Fe County.

10. After Mr. Zolnosky built and sold each home, Mr. Morrow would be contacted by either Mr. Zolnosky or the title company.

11. Mr. Morrow would receive payment of the principal and interest from the title company. In some instances, Mr. Morrow would roll the principal into another loan so Zolnosky could obtain another property and build another home.

12. On May 29, 2003, the Morrows loaned the Zolnoskys $170,000.00 for the construction of a residence on Bishop Lamy Road in Santa Fe County ("Santa Fe house"). The Morrows and the Zolnoskys, as officers of Zolnosky Constuction, Inc., executed a Construction Mortgage, Promissory Note and Construction Loan Agreement (the "2003 loan").

13. Mr. Morrow received a copy of the construction loan documents for the 2003 loan.

14. Mr. Morrow testified that he assumed the loan documents for the 2003 loan had been recorded because the documents had been recorded in all of the previous loan transactions.

15. In fact, the construction mortgage from the 2003 loan was not recorded.

16. Mr. Morrow testified that he contacted Mr. Zolnosky in March 2004 about making another loan because he had some additional funds available for

3

investment.

17. Mr. Morrow testified that at the time he contacted Mr. Zolnosky in March 2004, he believed that the Santa Fe house has not been sold based on representations by Mr. Zolnosky. Mr. Morrow testified that Mr. Zolnosky told Mr. Morrow that the Santa Fe house was taking longer to sell because he made a mistake by using materials that were "too fancy."

18. On March 29, 2004, the Morrows loaned the Zolnoskys additional funds in the amount of $210,000.00 for the construction of a residence in Placitas, New Mexico ("Placitas house."). The Morrows and the Zolnoskys, as officers of Zolnosky Constuction, Inc., executed a Construction Mortgage, Promissory Note and Construction Loan Agreement (the "2004 loan").

19. Mr. Morrow testified that he received copies of the loan documents from the 2004 loan.

20. Mr. Morrow testified that he believed the loan documents from the 2004 loan had been recorded because of a handwritten notation containing four numbers at the top of the first page of the Construction Mortgage.

21. The construction mortgage from the 2004 loan was not recorded.

22. Mr. Morrow testified that he and Mrs. Morrow became concerned in 2006 because they had not received their money, had not heard from Mr. Zolnosky, and could not find a contact number for him.

23. In September 2006, the Morrows went to see the Santa Fe house to determine the progress of the sale and discovered the house had been sold.

24. Thereafter, Plaintiff, Ben Morrow, called and confronted Mr. Zolnosky about the

sale of the Santa Fe home. Mr. Zolnosky admitted that he was unable to repay both loans and promised to pay the loans.

25. Mr. Morrow asked Mr. Zolnosky why he did not record the mortgages from the 2003 loan and the 2004 loan and did not get a response.

26. Mr. Morrow testified that he received two payments of $20,000.00 each, for a total of $40,000.00 in connection with the 2003 loan and the 2004 loan , but that he lost a total of $340,000.00 on these two loans.

27. Mr. Morrow testified that the payments were received from Defendants between 2004 and 2006 but prior to the discovery that the two homes were sold. Mr. Morrow testified that at the time each payment was made Mr. Zolnosky told him that these were interest payments since the homes had not been sold.

28. Mr. Morrow testified that he would not have made the 2003 loan or the 2004 loan if he had known Mr. Zolnosky was not going to record the mortgage documents related to these loans.

## CONCLUSIONS OF LAW

Plaintiff asks this court to deny discharge of the debt resulting from the 2003 loan and 2004 loan pursuant to 11 U.S.C.§523(a)(2)(A). Under §523(a)(2)(A) a court may deny a discharge of a debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C.§ 523(a)(2)(A). Under this subsection the creditor must show by a preponderance of evidence that: the debtor made a misrepresentation; the debtor made the misrepresentation with the intent to deceive; the creditor justifiably relied on the misrepresentation; and that the misrepresentation caused the

5

creditor to sustain damages.[1]  Discharge provisions will be strictly construed against the creditor and liberally construed in favor of the debtor.[2]

The first element under §523(a)(2)(A) requires a showing of actual fraud or false pretenses or false representation or willful misrepresentation.[3]  "False pretenses" or "representations" are representations knowingly and fraudulently made that give rise to the debt.[4] Courts have defined "fraudulent misrepresentation" as: "one who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."[5]

The second element under §523(a)(2)(A), intent to deceive, is a question of fact which can be inferred based on the totality of circumstances.[6]  Because a debtor rarely admits an intent to defraud, a Plaintiff can satisfy the scienter element through circumstantial evidence from

---

[1] See *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996)(setting forth the requirements for a 523(a)(2)(A) claim);  *Field v. Mans*, 516 U.S. 59, 74-75, 116 S.Ct. 437, 133 L.Ed.2d 351(1995) (establishing "justifiable" standard of reliance); *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 657, 112 L.Ed.2d 755 (1991)(establishin preponderance of evidence standard of proof for dischargeability actions.)

[2] See *Bellco First Fed. Cr. Union v. Kaspar ( In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir.1997).

[3] *In re Audley*, 268 B.R. 279, (Bankr.D.Kan.,2001.)

[4] *In re Lang*, 293 B.R. 501, 514 (10th Cir.BAP (Utah),2003)(citing *Driggs v. Black (In re Black)*, 787 F.2d 503, 506 (10th Cir.1986), abrogated in part on other grounds, *Grogan v. Garner*, 498 U.S. 279, 283, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

[5] *In re McGuire*, 284 B.R. 481, 488 (Bankr.D.Colo.,2002)(citing Restatement (Second) of Torts § 525 (1976)); In re Chivers, 275 B.R. 606(Bankr.D.Utah,2002);

[6] *In re Baines*, 337 B.R. 392, 399 (Bankr. D.N.M.,2006)(quoting *Fowler Bros.*, 91 F.3d at 1375 ("[T]he debtor's intent to deceive the creditor in making false representations to the creditor, may be inferred from the 'totality of the circumstances.'"))

which the Court may infer the requisite intent to defraud.[7] The Court must consider the totality of the circumstances as of the time the representation was made to determine whether a debtor had a subjective intent to defraud the creditor.[8] The Court may logically infer an intent to deceive if the debtor knowingly or recklessly makes a false representation that the debtor knew or should have known would induce another to act.[9]

In order to satisfy the reliance element of 523(a)(2)(A), a party need only have justifiably relied on the misrepresentation. Justifiable reliance does not require that the creditor prove that he acted consistent with ordinary prudence and care.[10]

The final element of 523(a)(2)(A) requires the creditor to establish the harm caused by the debtor's fraudulent misrepresentations.[11]

Plaintiff, Ben Morrow alleges that Defendant, Monte Zolnosky committed fraud when he obtained the 2003 loan and the 2004 loan. At trial, Mr. Morrow testified about the prior course of dealings between the parties. Specifically, Mr. Morrow testified that there had been at least eight or nine successful loan transactions in the ten years prior to the 2003 loan. He testified that for each of these previous transactions Defendant provided Plaintiff with copies of recorded construction mortgages after the construction loan documents were executed and the money was received by the Defendant. Mr. Morrow would receive the recorded documents between a few

---

[7] *Young* at 1375.

[8] *Id.*

[9] *Hill v. Horst (In re Horst)*, 151 B.R. 563, 568 (Bankr.D.Kan. 1993)

[10] In re Chivers, 275 B.R. 606, 622 (Bankr.D.Utah 2002)(A party may justifiably rely on a misrepresentation even when he could have ascertained its falsity by conducting an investigation.)

[11] *Id.* at 621-622

7

days to several months following each transaction. Mr. Morrow testified that he knew the construction mortgages had been recorded because of the stamp from some entity affixed to the documents. Mr. Morrow further testified that when the 2003 loan was made he assumed that loan documents would be recorded in conformity with prior transactions. Under direct examination by Plaintiff, Mr. Zolnosky testified that he did not record any of the loan documents. To show the history of the prior transactions between the parties, Mr. Morrow introduced a copy of a construction mortgage from 1999, admitted as Exhibit 5, that was recorded in the Office of the County Clerk of Santa Fe County.

   Upon review of Exhibit 5 and further questioning, Mr. Zolnosky admitted that in the prior transactions he gave the loan documents to the title company to be recorded. He also admitted that he did not give the 2003 loan or 2004 loan documents to the title company as he had done in all past transactions. It is evident, from the previous course of dealing, that Mr. Zolnosky misrepresented that the documents would be recorded. The Court is persuaded that there was an ongoing, implied promise that the loan documents would be recorded for each transaction. Unfortunately, Plaintiff did not elicit any testimony or provide any evidence to show why Mr. Zolnosky did not follow the same procedure as in the prior transactions or that his intent at the time of the 2003 loan was to not have the loan documents recorded. Mr. Morrow testified that had he known the documents would not be recorded he would not have made the loans. The Court finds that at the time of the 2003 loan transaction Mr. Morrow justifiably relied on the course of conduct from the prior transactions. But because Mr. Morrow failed to introduce any evidence that the Defendant did not intend to have the loan documents recorded, Mr. Morrow failed to meet his burden to establish Defendant's fraudulent intent at the time the loan proceeds from the 2003 loan were received.

8

In sum, for the 2003 loan Mr. Morrow established that a misrepresentation occurred, that he justifiably relied on the misrepresentation and that he was harmed by the misrepresentation but failed to prove intent. For the 2004 loan, Plaintiff also fails to meet his burden to establish all of the requisite elements to allow the Court to determine the debt non-dischargeable.

Mr. Morrow testified that, at the time of the 2004 loan, he approached Mr. Zolnosky about making that loan because he had additional funds available for investment. Mr. Morrow testified that Mr. Zolnosky indicated that there were lots available to build in Placitas and he could use as much money as Mr. Morrow had available to lend in order to build another house. At this time, Mr. Zolnosky informed Mr. Morrow that the Santa Fe house was not sold and was taking longer to sell because Mr. Zolnosky had made a mistake in using more expensive materials thereby increasing the price per square foot. Mr. Zolnosky never indicated that he would have any trouble repaying the loans. Mr. Morrow further testified that Mr. Zolnosky failed to disclose his financial condition. Mr. Morrow testified that because of the prior transactions and a handwritten notation at the top of the Construction Mortgage he expected Mr. Zolnosky to have the loan documents recorded. Mr. Zolnosky's pattern of conduct of not recording the 2003 loan and 2004 loan, despite the ongoing, implied promise to record loan documents, from the prior course of dealings, suggests fraudulent intent. These actions compounded with Mr. Zolnosky's testimony, specifically, his initial testimony that he did not record the mortgages and then, after further questioning admitted that he would give the loan documents to the title company for recording further supports the Court's belief that there was fraudulent intent. Regardless, at the time of the 2004 loan transaction, Mr. Morrow had copies of the 2003 loan documents that on their face were not recorded. As discussed above, Mr. Morrow testified that in the prior successful loan transactions, he knew when loan documents were

recorded by the stamp on the construction mortgages.[12] Based on Exhibit 5 and Mr. Morrow's testimony, the Court finds that Mr. Morrow's reliance that Mr. Zolnosky would record the documents from the 2004 loan was not justifiable. In issuing this memorandum the Court in no way condones the behavior of Mr. Zolnosky. He has deprived the Plaintiffs of a significant portion of their retirement assets and caused them great financial distress.

However, having determined that Plaintiff has not shown all of the required elements of 11 U.S.C. §523(a)(2)(A) for either loan transaction, the Court must deny the relief sought.

## CONCLUSION

Based on the foregoing, the Court concludes that the debts at issue in this adversary proceeding are dischargeable under 11 U.S.C. §523(a)(2)(A). The Court will enter a judgment consistent with this Memorandum Opinion.

---

[12] Mr. Morrow introduced Exhibit 5, the loan document from a 1999 loan which was recorded and contained the stamp.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

Entered on Docket Date: August 28, 2008

Copy to:

Aaron J. Wolf
White, Koch, Kelly & McCarthy, P.A.
P.O. Box 787
Santa Fe, NM 87504-0787

Charles R. Hughson
William F. Davis & Assoc. P.C.
6709 Academy Road, NE, Suite A
Albuquerque, NM 87109

11